## Wofford v. Vavreck

*D. Douglas Keegan*, for plaintiffs.
*Ted J. Padden*, for defendants.

THOMAS, *P.J.*, February 19, 1981 — This lawsuit comes before the court on plaintiffs' request for injunctive relief. The sole issue for decision is whether a landlord seeking repossession of his leased premises for nonpayment of rent from an unwilling tenant must so do by legal process.[1]

## FACTS

Plaintiffs are tenants of a mobile home community owned by defendant Cripe and managed by defendant Vavreck. Plaintiffs are currently in possession of a mobile home under the terms of a written lease agreement calling for a monthly rent of $116.[2] That lease also provides inter alia, that:

---

1. Legal process available to such a landlord would include either an action for possession under the Landlord and Tenant Act of April 6, 1951, P.L. 69, as amended 68 P.S. §250.101 et seq., and the related Pennsylvania Rules of Civil Procedure for Justices of the Peace, Rules 501-582; or an action in ejectment under Pa.R.C.P. 1051-1058.

2. The original lease agreement, executed on August 1, 1978, was for a ten-month period. However, both parties stipulate to its automatic renewal and hence its effectiveness at the time of the incidents spawning this lawsuit.

"In the event of a default by Tenant as specified above or under any of the terms of this lease, Landlord may, at his option, and without prior notice to Tenant:

(1) take immediate possession of the premises as though this lease had expired. This action shall under no circumstances be considered as an eviction of the Tenant, nor as forcible entry, nor a holding back of the premises from Tenant; Tenant forfeiting possession by such default, and/or

(2) declare this lease null and void and demand possession of the premises from Tenant, using any rights or remedies as provided by law." (Under Default Clause—No. 30)

Plaintiffs have been in arrears on portions of their monthly rental payments since December, 1978. Because of the continual nature of the arrearages, defendant Vavreck, in September of 1980, decided to retake possession of the mobile home occupied by plaintiffs.

However, rather than pursue either the statutory remedy for repossession provided by the Landlord and Tenant Act or maintain an ejectment proceeding, defendant Vavreck undertook what is commonly known as a self-help eviction. On September 26, 1980, he served plaintiffs with a document entitled "Three Day Notice of Nonpayment of Rent." That document advised plaintiffs that they currently owed $619.24 in past rent due and late charges, demanded immediate payment and further advised them that their failure to pay would result in the commencing of "summary proceedings at law to recover possession of the mobile home." However, instead of pursuing such a remedy at law, defendant Vavreck, on October 2, 1980, after no overdue rent was forthcoming, padlocked the door of the mobile home, terminated water and

electricity supplies and placed the following note on its door:

"We have taken possession of your apartment due to unpaid rent. You may make payment in full and arrange to pick up your property at the office during hours."

Plaintiffs immediately brought suit, seeking both a preliminary injunction restoring them to possession of the mobile home and a permanent injunction prohibiting defendants from ever dispossessing them without resort to a proceeding at law. We granted the preliminary injunction and restored plaintiffs to the mobile home pending final disposition of this lawsuit.[3]

## DISCUSSION

It is clear that the common law of Pennsylvania permitted a landlord to re-enter his leased dwelling for breach of a lease condition and to retake possession of it without the aid of any court of legal process: Mayer v. Chelten Avenue Building Corporation, 321 Pa. 193, 183 A. 773 (1936).

Plaintiffs, however, initially contend that the adoption of the Landlord and Tenant Act of 1951 constituted a legislative decision to abolish the common law self-help remedy and to instead make the act the exclusive vehicle by which to repossess real property. Plaintiffs weave their interpretation of legislative intent from several threads provided in the act. The Historical Note to section 250.101

---

3. We note here that the Mobile Home Park Rights Act, of November 24, 1976, P.L. 1176, 68 P.S., §398.1 et seq., is not applicable here because plaintiff residents do not own the mobile home in which they reside. If that act were applicable, our inquiry would be unnecessary because self-help evictions are expressly forbidden by its terms.

states that the Landlord and Tenant Act is: "An Act relating to the rights, obligations and liabilities of landlord and tenant and of parties dealing with them and *amending, revising changing and consolidating the law relating thereto.*" (Emphasis supplied.)

Next, plaintiffs point to the "General repeal" found in section 250.602 which states that: "All other acts and parts of acts, general, local and special, inconsistent with or supplied by this act, are hereby repealed. *It is intended that this act shall furnish a complete and exclusive system in itself.*" (Emphasis supplied.)

Finally, plaintiffs note that section 250.103, entitled "Provisions excluded from Act" does not list the remedy of self-help among those practices and procedures not modified or repealed by the act's adoption. Accordingly, on the basis of the foregoing sections, plaintiffs conclude that the adoption of the Landlord and Tenant Act of 1951 legislated out of existence a landlord's common law self-help repossession remedy.

To the contrary, we find no real or implied legislative intent in 1951 to abolish the landlord self-help doctrine. Close scrutiny of the Landlord and Tenant Act of 1951 reveals that when enacted, it was intended to be a codification and consolidation of four existing landlord and tenant statutes only and did not also consolidate existing principles of common law. The 1951 act indicates a desire to consolidate the four unwieldy earlier acts which were overtechnical, difficult to apply and sometimes ineffective in providing the remedy intended.[4] See M.

4. The prior acts were: Act of March 21, 1772, 1 Sm. L 370, 68 P.S., §361 et seq; Act of April 3, 1830, P.L. 187, 68 P.S., §391-92; Act of December 14, 1863, P.L. 1125, 68 P.S. §364; Act of March 31, 1905, P.L. 87, 68 P.S., §364.

Stern, Trickett on the Law of Landlord and Tenant in Pennsylvania, (Revised Third Edition 1973), Vol. 2, page 4.

Because the concept of self-help eviction enjoyed judicial approval during the tenure of the prior landlord and tenant repossession statutes (see Overdeer v. Lewis, 1 Watts & S. 90 1841), it is unrealistic to conclude that the legislature, in 1951, when consolidating those prior acts, impliedly outlawed the use of self-help evictions in the absence of any expressed clear intent to do so. Indeed, one commentator, in reviewing the landlord's use of the statutory provisions to recover possession contained in the 1951 act, states that: " . . . [T]here exists the additional remedies of ejectment and self-help. . . . The landlord may also *regain possession through self-help where the lease has expired or where there is a provision in the lease which provides for a forfeiture in the case where rent is due and unpaid* or where a covenant which provides for surrender of possession has been breached." (Richardson, The Pennsylvania Landlord and Tenant Act of 1951, 13 U. Pitt L. Rev. 414 (1952).) (Emphasis supplied.)

Accordingly, we find that the legislature did not intend, in 1951, to legislate self-help evictions out of existence. We do, however, find the self-help doctrine dead for other reasons hereafter noted.

Plaintiffs, in the alternative, contend that developing case law and public policy concerns preclude a landlord in the 1980's from resorting to self-help to dispossess his tenant. With this contention, plaintiffs have struck legal pay dirt. Although we found that self-help evictions were not legislatively revoked in 1951, we further find that the courts in

the 1970's have effectively laid to rest the use of self-help evictions for nonpayment of rent.[5]

Our courts have a continual duty to reappraise old doctrines in light of the facts and values of contemporary life — particularly old common law doctrines which the courts themselves have created and developed: Pugh v. Holmes, 486 Pa. 272, 405 A. 2d 897 (1979). And when a doctrine has been duly tested by experience and found inconsistent with the sense of justice or the social welfare, there should be little hesitation in frank avowal and full abandonment: Griffith v. United Airlines, Inc., 416 Pa. 1, 203 A. 2d 796 (1964).

There are numerous reasons why self-help evictions for nonpayment of rent should be abandoned. Obviously, the use of self-help increases the potential of violent confrontations between landlord and tenant. It is also less orderly than a proceeding at law and affords the tenants essentially no rights. Because self-help involves the taking of property (deprivation of shelter) without affording a tenant notice and an opportunity to present defenses or to otherwise be heard, it involves an arguable violation of due process: Fuentes v. Shevin, 407 U.S. 67 (1972).

---

5. Defendants have contended that, in addition to the available common law remedy of self-help, they have a contractual right to use such self-help pursuant to the terms of the lease.

We do not believe that this characterization increases the rights and powers of the landlord because the cases cited as providing a common law right to retake possession are ones in which the lease at issue also provides a contractual right to re-enter. See Mayer, supra. Thus, in Pennsylvania, what is referred to as a common law right to retake possession for breach of a lease term (usually for nonpayment of rent) is in actuality also a contractual right to retake.

Moreover, the abandonment of the self-help eviction is but a natural judicial extension of the well settled doctrine that a forfeiture of a leasehold is odious and must be strictly construed: Elizabethtown Lodge No. 596 v. Ellis, 391 Pa. 19, 137 A. 2d 286 (1958). By forbidding a private self-help repossession following a real or imagined forfeiture, and instead requiring a landlord to proceed by legal process, the judicial obligation to examine that forfeiture with close scrutiny is best served.

Finally, if not abandoned, self-help evictions would seriously undermine the protection inherent in the newly recognized implied warranty of habitability applicable to all residential leases: Pugh, supra. In Pugh, our Supreme Court held that the covenants and warranties in such a lease are mutually dependent; the tenant's obligation to pay rent and the landlord's obligation imposed by the implied warranty of habitability to provide and maintain habitable premises are, therefore dependent and a material breach of one of these obligations will relieve the obligation of the other so long as the breach continues.

Thus, if a landlord breaches his implied warranty of habitability, a tenant is relieved of his duty to pay any or all of his rent. Nor must the unpaid rent be placed into escrow: Pugh, supra. Accordingly, a tenant, although relieved of his duty to pay rent because of what he perceives to be a breach of the landlord's warranty of habitability, becomes a sitting duck to a self-help eviction for failure to pay his rent. In fact, the threat of a self-help eviction, by making hollow the tenant's right to withhold rent, is the ultimate weapon by which a landlord could effectively subvert his obligation to deliver habitable premises.

Because of the various concerns outlined above,

we think the time has come for the abolition of self-help evictions. We are not alone. We cite with approval six decisions from our sister common pleas courts which have granted injunctive relief on various theories to tenants who were evicted by self-help.

In Perine v. Novay (Allegheny Co. 1975), the landlord removed all windows and doors from the tenant's apartment, removed all the tenant's furniture and disconnected the electrical and gas system. The tenant was granted injunctive relief requiring the landlord to restore everything he had removed. In Ebersole v. Narehood (Perry Co. 1975), and in Buffington v. Ballester, (Chester Co. 1976), the landlord padlocked the doors to the tenant's apartment. The tenant was awarded injunctive relief enjoining the landlord from interfering with the tenant's right of access to the premises, thereby compelling the landlord to remove the padlocks.

In Venezia v. Stake, (Franklin Co., 1977), the landlord, after giving the tenant a five-day oral notice to quit, removed the heat and electrical fuse cartridges and hauled the tenant's furniture away by truck. The landlord was directed to refrain from using such self-help.

In Bentzel v. Pennebaker, (Dauphin Co. 1975), the landlord doubled the tenant's rent and required payment thereof as a prerequisite to access to the premises. The tenant, whose sole income was public assistance, obtained an injuction enjoining the landlord from interfering with the tenant's peaceful access to and from the apartment.

Finally, in Morrison v. Brungard, (Lycoming Co. 1974), the court in enjoining a landlord from locking out the tenant for nonpayment of rent noted that:

" . . . [T]he Landlord Tenant Act of 1951 and the

related Rules of Procedure for Justice of the Peace Court provides the exclusive process for a recovery of possession of real estate for rental arrears. The procedure outlined in the Act provides the Landlord with a reasonable means of evicting tenants who fail to make rent payments while at the same time furnishing the tenant, through proper notice, with reasonable time in which to relocate. To permit self-help would ignore the obvious legislative intent to permit a tenant, allegedly in arrears in his rent, fifteen days to relocate during the warmer months and thirty days during the colder months."

If the void left by the abolishment of self-help cannot be adequately and effectively filled by the 1951 act, as amended, and the related rules of procedure, then any resulting unfair advantage to either landlord or tenant must be remedied by legislative correction.

## CONCLUSIONS OF LAW

1. A landlord desirous of seeking repossession of his leased premises from his tenant for nonpayment of rent must do so either by bringing an action under the Landlord and Tenant Act of 1951, as amended, and the related Pennsylvania Rules of Civil Procedure for Justices of the Peace, or by bringing an action in ejectment.

2. A landlord may not undertake a self-help (without legal process) dispossession or eviction of his tenant for nonpayment of rent.

## DECREE NISI

And now, February 19, 1981, defendants are hereafter enjoined from dispossessing plaintiffs for nonpayment of rent through self-help measures.

Any such attempted dispossession must hereafter be pursued through legal process.

If no exceptions are filed within 20 days of this date, this decree nisi shall be entered by the prothonotary on praecipe as the final decree.