

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2008

# Williams v. Kusnairs Bar

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3436

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Williams v. Kusnairs Bar" (2008). *2008 Decisions.* Paper 781.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/781

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 07-3436
_____

DONTE ROYES WILLIAMS,

Appellant

v.

KUSNAIRS BAR & TAVERN; MARK RUSIA, Owners; RANDALL KUSNIAR;
COMMUNITY ACTION INC. OF FAYETTE COUNTY
_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 04-cv-00299)
Magistrate Judge: Francis X. Caiazza
_____

Submitted Under Third Circuit LAR 34.1(a)
May 27, 2008
Before: MCKEE, SMITH and CHAGARES, <u>Circuit Judges</u>

(Filed  July 29, 2008)

_____

OPINION
_____

PER CURIAM

Donte Williams seeks review of the Magistrate Judge's various orders dismissing

his civil rights case, denying him appointment of counsel, and denying him a jury trial.[1]

For the reasons that follow, we will affirm in part, vacate in part and remand the case for

further proceedings.

I.

Williams filed his initial pro se civil complaint against Appellees Mark Rusia and Randall Kusniar ("Kusniar"), owners of Kusnair's Bar and Tavern.[2] In a later amended complaint, Williams also added the Fayette County Community Action Agency ("the FCCAA"). The allegations stem from a landlord-tenant dispute between Kusniar and Williams. In 2001, Williams, having found himself homeless, sought assistance from the FCCAA in finding housing. Jan Brogdan, a case-worker from the FCCAA, and Kusniar entered into an agreement to rent a room to Williams, who received his key on July 2, 2001. Monthly rent for the apartment was set at $150, Williams paid Kusniar $125 of July's rent and received a receipt.[3] Kusniar and Brogdan also completed a "rental verification form" requiring a monthly rental payment of $150 and a $150 security deposit. The form indicates that by accepting payment from the FCCAA Kusniar agreed not to evict Williams for thirty days from the date of the issued check.

Soon thereafter, the relationship between Kusniar and Williams began to deteriorate. Kusniar received daily complaints from four other tenants concerning excessive noise levels, partying, and Williams' aggressive behavior. Kusniar testified that he attempted to address these complaints, but Williams ignored him. According to Kusniar, he then informed Williams that if his conduct continued unabated he would be evicted. Williams, an African-American, alleges that throughout the rental period Kusniar subjected him to racial harassment and threatened him with "KKK action". Williams regularly made threats of bodily harm towards Kusniar and the other tenants. The situation worsened on July 25, 2001, when a confrontation between Williams and Kusniar required police involvement. No charges were filed against either party.

---

[1] The parties consented to proceedings before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[2] Kusnair's Bar and Tavern is also referred to as Kusniar's Bar and Tavern.

[3] The receipt indicates that Williams paid $150. Williams testified that the $125 payment was rent for the month of August. The Magistrate Judge, in his findings of fact, indicated that Williams' payment was for the month of July. It is undisputed, however, that Kusniar was paid a total of $425: $300 by the FCCAA and $125 by Williams.

Following these instances and motivated by the tenant complaints, Kusniar terminated Williams' lease on August 3, 2001. Weeks later, the FCCAA issued a $300 check to cover Williams' security deposit and one month's rent. Despite Williams' eviction, Kusniar cashed the check.

Williams then filed an action in federal court alleging violations of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 et seq., federal civil rights laws and violations of various Pennsylvania statutes. After dismissing the FCCAA and Mark Rusia, the Magistrate Judge held a bench trial on Williams' remaining claims against Kusniar.[4] After trial, the Magistrate Judge entered judgment for Kusniar on all claims. Williams filed a timely notice of appeal challenging the Magistrate Judge's denial of his motions for court appointed counsel and jury trial, and the judgment of the Court on the FHAA claim, the civil rights claims, the state law contract claim, the Pennsylvania Unfair Trade Practices and Consumer Protection claim, and the Pennsylvania Landlord Tenant Act of 1951 claim.

## II.

We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review findings of fact for clear error and exercise plenary review over conclusions of law or the application of legal precepts to the facts. Brisbin v. Superior Valve Co., 398 F.3d 279, 285 (3d Cir. 2005).

## III.

We agree with the Magistrate Judge that Williams' claims under 42 U.S.C. §§ 1981 and 1982 and the FHAA, are meritless. In order to state a claim under §§ 1981 and 1982, Williams was required to offer proof of intentional discrimination. See Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001). Under the FHAA, a plaintiff must prove only that some discriminatory purpose was a motivating factor behind the challenged action. Cmty. Services, Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005). As proof of discrimination, Williams offered only his testimony that Kusniar directed racial epithets against him on several occasions. Kusniar testified that he evicted Williams because of his unruly behavior and that there was an African-American tenant, besides Williams, residing in one of Kusniar's rental rooms. Kusniar also presented the testimony of two tenants who corroborated his account of Williams' disruptive and threatening behavior. In light of the evidence presented, we agree with the Magistrate Judge that Williams failed to prove that Kusniar's decision to evict him was based on his race.

## IV.

The Magistrate Judge also found that Kusniar had good cause to evict Williams.

---

[4] Summary judgment was granted for Rusia with respect to the state law defamation claim and claims based upon provisions of 42 U.S.C. § 1985.

The Magistrate Judge's finding is irrelevant, however, because Kusniar failed to comply with the notice provisions of Pennsylvania's Landlord Tenant Act of 1951 ("the Act"). Under the Act, a landlord must give a tenant at least 15 days notice in writing before commencing eviction proceedings. See 68 Pa. Stat. Ann. § 250.501 (2007). It appears that the earliest Williams had oral notice was July 25, nine days before the eviction. The Magistrate Judge determined that the Pennsylvania Supreme Court would, despite the notice provisions of the Act, allow for "self-help" evictions without notice in cases where, as here, the tenant poses an imminent and immediate threat to the landlord and/or other tenants.[5]

We cannot agree with the Magistrate Judge's conclusion. "In predicting how a matter would be decided under state law we examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issues we face here." Hughes v. Long, 242 F.3d 121, 128 (3d Cir. 2001). We have found no pertinent decisions by the Pennsylvania Supreme Court or Superior Court. The Magistrate Judge and Appellee rely on Wofford v. Vavreck, 22 Pa. D. & C.3d 444 (Pa. Com. Pl. 1981) for the proposition that self-help remains viable under Pennsylvania law. In Wofford, however, the Court of Common Pleas determined only that the passage of the Act did not eliminate self-help as a common law remedy for landlords. Id. at 449. Citing public policy concerns and developing case law, the court held that self-help had been eliminated as a remedy for nonpayment of rent. Id.

The Magistrate Judge interpreted Wofford as allowing self-help evictions for landlord-tenant disputes not involving the non-payment of rent. We disagree that Wofford supports the argument that self-help is acceptable when a tenant poses an imminent threat to other tenants. The public policy considerations in Wofford militating against self-help evictions seemingly apply to the eviction of unruly or threatening tenants: the potential for violent confrontations, deprivation of the evicted tenant's shelter, and the tenant's lack of opportunity to present defenses or otherwise be heard. In fact, one of Williams' contentions is that he was evicted before he could obtain assistance from Southwestern Pennsylvania Legal Services to challenge the eviction. Moreover, the Magistrate Judge's reasoning is contrary to later cases holding that self-help has been eliminated completely. See Lenair v. Campbell, 31 Pa.D. & C.3d 237, 241-42 (Pa. Com. Pl. 1984); see also O'Brien v. Jacob Engle Foundation Inc., 47 Pa. D. & C.3d 557, 560 (Pa. Com. Pl. 1987). The court in Lenair determined that the legislature

---

[5] Self-help eviction is an action taken by the landlord other than judicial process, which serves to evict or has the tendency to evict a tenant. See Lenair v. Campbell, 31 Pa.D. & C.3d 237, 240 (Pa. Com. Pl. 1984).

envisioned the Act as a "complete and exclusive remedy for a landlord seeking to vindicate his rights." Lenair, 31 Pa. D. & C.3d at 242. Since self-help eviction was not among the remedies listed in the Act, the court reasoned, it is no longer available to a landlord in Pennsylvania under any circumstances. Id. at 241-42.

While it is true that none of the cases address self-help in a situation where the tenant posed an immediate threat, neither the Magistrate Judge nor the Appellee provide convincing reasons for this distinction, let alone published authority. Accordingly, we disagree with the Magistrate Judge's prediction that the Pennsylvania Supreme Court would allow for self-help eviction where the tenant presents an immediate threat to the landlord or other tenants.

V.

Williams also argued that a contractual relationship existed between him and Kusniar and, therefore, that he should be allowed to sue for damages based on Kusniar's violation of the lease. The Magistrate Judge held that Williams could not sue for damages under the agreement between the FCCAA and Kusniar because he was not a third-party beneficiary to the contract. We disagree.

In Pennsylvania a party becomes a third party beneficiary where both parties to the contract express an intention to benefit the third party in the contract itself. Scarpitti v. Weborg, 530 Pa. 366, 370, 609 A.2d 147, 149 (Pa. 1992). The Pennsylvania Supreme Court has also adopted a two-prong test based on Section 302 of the Restatement (Second) of Contracts to determine whether a party is an intended third-party beneficiary: 1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and 2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. Id. at 150.

It is clear, on the face of the rental verification form and from the parties intentions, that Williams is an intended beneficiary of the contract between the FCCAA and Kusniar. The form, signed by Kusniar, states that Kusniar agrees to rent Williams a room at $150 per month. It also states that, by accepting partial payment from the FCCAA, Kusniar agrees not to evict Williams for thirty calendar days from the date of the issued check. Thus, both parties clearly intended to benefit Williams: the FCCAA provided monetary consideration in order to secure Williams an apartment and Kusniar, in return, agreed not to evict Williams for one month from the date of the check. The comments to Section 302 explicitly contemplate this type of arrangement. See Restatement (Second) of Contracts § 302 cmt. b, cmt. d (1979).

It may be true, as the Magistrate Judge reasoned, that the FCCAA received consideration for its investment in the form of a promise from Kusniar not to evict Williams and, in return, Kusniar received one months' rent. As the commentary notes, however, the benefits of a contract may flow to both promisee and beneficiary: "Section 2

defines 'promisee' as the person to whom a promise is addressed and a 'beneficiary' as a person other than the promisee who will be benefitted by performance of the promise. Both terms are neutral with respect to rights and duties: either or both or neither may have a legal right to performance." Id. at cmt. a. Kusniar's agreement benefitted the FCCAA by providing it fair consideration for its investment while at the same time providing Williams with an assurance that he would not be evicted from the rental unit for one month.

The Magistrate Judge further reasoned that, because Williams was properly evicted, even if he was a third party beneficiary, he suffered no damages. In light of our conclusion to the contrary, we leave it to the Magistrate Judge on remand to determine what damages, if any, Williams merits under the contract between the FCCAA and Kusniar.

## VI.

The Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL") protects a person who "purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act . . . ." 73 Pa. Cons. Stat. § 201-9.2 (2008). The Magistrate Judge determined that because there was no contractual relationship between Kusniar and Williams, Williams had no standing to bring an action under the UTPCPL. The statute, however, speaks in terms of "purchaser" and not in terms of a contractual relationship. Williams paid $125 in monthly rent to Kusniar. Therefore, Williams is a purchaser of housing and he has standing to sue under the statute. See Commonwealth v. Monumental Properties, Inc., 459 Pa. 450, 457 329 A.2d 812, 815 (1974) (the UTPCPL covers allegedly unfair or deceptive practices in connection with the leasing of housing). We leave it to the Magistrate Judge to decide, on remand, whether there have been any violations of the UTPCPL.

## VII.

Appointment of counsel for civil litigants is discretionary and therefore we review the Magistrate Judge's denial of counsel for an abuse of discretion. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993). Williams requested appointment of counsel on three occasions prior to trial and on each occasion the Magistrate Judge denied his motion. We find that the Magistrate Judge properly applied the factors governing the appointment of counsel. Id. at 155-58.

Finally, Williams' argument that the Magistrate Judge improperly denied him a jury trial is without merit. The Court struck Williams' demand for a jury trial because it was not timely requested. See Fed. R. Civ. P. 38 (b)(1). Williams argues that his demand was improperly struck because he was entitled to rely on FCCAA's demand for a jury trial. Williams, however, waived his right to a jury trial by participating in a bench trial without objection. See Wilcher v. City of Wilmington, 139 F.3d 366, 379 (3d Cir. 1998).

-6-

VIII.

For the reasons stated above, we will affirm in part, vacate in part and remand the case for further proceedings not inconsistent with this opinion. Appellant's motion to dismiss Appellee Fayette County Community Action Agency (FCCAA) as a party to the appeal is granted and the caption is amended accordingly.